IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 13, 2022

**ANTYWAN EUGENE SAVELY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Bedford County**
**No. 18782-PC          M. Wyatt Burk, Judge**
_____

**No. M2021-00746-CCA-R3-PC**
_____

Petitioner, Antywan Eugene Savely, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding that he received the effective assistance of counsel at trial. More specifically, Petitioner asserts that trial counsel was ineffective for failing to present any proof on his behalf. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

Jonathon Fagan, Auburntown, Tennessee, for the appellant, Antywan Eugene Savely.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin Ball, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

Petitioner was indicted by the Bedford County Grand Jury for sale of codeine, delivery of codeine, and conspiracy to sell or deliver codeine. After a jury trial, Petitioner was convicted as charged. The trial court merged the delivery conviction into the sale conviction and imposed a twelve-year sentence as a Persistent Offender. The trial court imposed a consecutive twelve-year sentence as a Career Offender for the conspiracy

conviction, for an effective sentence of twenty-four years in the Department of Correction. This court affirmed Petitioner's convictions and sentence on appeal. *State v. Antywan Eugene Savely*, No. M2019-00249-CCA-R3-CD, 2020 WL 3455532 (Tenn. Crim. App., June 25, 2020), *no perm. app. filed*. The facts of this case as summarized on direct appeal are as follows:

> Lieutenant Timothy Miller was the assistant director of the task force at the time of the incident in this case and, in that role, often worked with confidential informants. Brian Smith was one such informant, and Lieutenant Miller testified that Mr. Smith "did a really good job." Mr. Smith did not know the Defendant's name, only mentioning him by description, and he called the other man "Joe." Lieutenant Miller suspected that "Joe" was Joseph Perez, a known drug user. After the fact, Lieutenant Miller recalled having seen the Defendant many years earlier.
>
> Lieutenant Miller stated that on June 9, 2016, Mr. Smith contacted him with information that two individuals were looking to sell a bottle of morphine. Lieutenant Miller asked Mr. Smith to arrange a meeting with the individuals in which Lieutenant Miller would go undercover and pose as a prospective buyer. Mr. Smith arranged for them to meet in the parking lot of a liquor store and informed Lieutenant Miller that the individuals would be in a late 1990s model red SUV. Agent Shane George, another member of the drug task force, was to conduct surveillance of the drug buy.
>
> Lieutenant Miller parked his car at a nearby location and counted out $160 in buy money, the serial numbers and denominations of the bills which he recorded, as well as outfitted himself with an audio recorder. He then walked to the liquor store and approached a vehicle matching the description he was given. He went up to the passenger's side and saw the Defendant sitting there, but the Defendant motioned for him to go around to the driver's side where Joseph Perez was sitting. Lieutenant Miller said that it was obvious the two men were anticipating his arrival. Lieutenant Miller walked around to the driver's side, and Mr. Perez opened the door. He saw the Defendant pass Mr. Perez a small bottle. Mr. Perez passed the bottle to Lieutenant Miller and said the price was $150. Lieutenant Miller questioned the authenticity of the contents, and Mr. Perez said that Lieutenant Miller could sample the product. Lieutenant Miller declined to sample the product but agreed to the price. Lieutenant Miller handed Mr. Perez $160, and Mr. Perez went to a nearby convenience store to get change.

Lieutenant Miller testified that while he waited on Mr. Perez, he sat down in the driver's seat and tried to engage the Defendant in small talk. However, the Defendant did not want to converse other than to ask Lieutenant Miller to lift his shirt. Lieutenant Miller noted that criminals often did this to make sure they were not being recorded. Rather than lifting up his shirt, Lieutenant Miller asked the Defendant to lift up his shirt in an effort to deflect the question and bide time until Mr. Perez returned. Mr. Perez returned with Lieutenant Miller's change, and Lieutenant Miller walked away and the two men drove off. Lieutenant Miller said that other officers immediately conducted a traffic stop of the red SUV, but the men were not arrested because Lieutenant Miller wanted to protect his informant.

Brian Smith, the confidential informant, testified that he knew Mr. Perez because they lived in the same apartment complex, and he had previously met the Defendant through Mr. Perez. On June 9, 2016, Mr. Perez contacted him about finding a willing buyer for a bottle of liquid morphine. Mr. Smith acknowledged that the Defendant was not involved in this conversation. Mr. Smith contacted Lieutenant Miller to see if he was interested. Thereafter, Mr. Smith went to Mr. Perez's apartment to discuss the arrangements, and Mr. Perez's girlfriend and the Defendant were also present. Mr. Smith noted that the Defendant could hear the discussion and never reacted in a way that indicated he was not involved in the impending drug deal. Mr. Smith told the men that the potential buyer was his uncle, and he watched as the pair left to meet Lieutenant Miller in a red SUV. At some point after the men left the apartment, Mr. Perez called Mr. Smith and asked him what his uncle looked like because he was having trouble finding him.

On cross-examination, Mr. Smith acknowledged that the Defendant never said anything about selling morphine during the meeting at Mr. Perez's apartment and that he had no phone conversations or texts with the Defendant about the deal. Mr. Smith admitted to having been in some trouble with the drug task force, which was why he worked as a confidential informant.

Agent Shane George testified that he surveilled the transaction from across the street and then subsequently conducted a traffic stop of the Defendant and Mr. Perez. He saw Lieutenant Miller approach a red SUV and then saw Mr. Perez get out of the vehicle and go into

the store, while Lieutenant Miller sat down in the driver's seat. Agent George did not observe any hand-to-hand exchange from his vantage point, but he listened to the conversation via Lieutenant Miller's wire transmitter.

Agent George testified that he had pre-arranged for a Shelbyville Police Department officer to conduct a traffic stop of Mr. Perez's vehicle after it exited the liquor store parking lot. Agent George then joined the Shelbyville officer and had both men exit the vehicle. Agent George searched Mr. Perez and found no money or drugs. He searched the Defendant and found $150 in one of his pants pockets. He believed that the cash was in all twenties and one ten-dollar bill. He acknowledged that he did not record the serial numbers on the bills. Agent George also searched the vehicle.

Joseph Perez testified that the Defendant called him on June 9, 2016, and said that he "had some liquid morphine . . . and needed help getting rid of it." Mr. Perez contacted Brian Smith to find a buyer and then drove to Murfreesboro to pick up the Defendant. The Defendant showed him a bottle, but Mr. Perez never saw its contents. The men returned to Shelbyville, and Mr. Smith came to Mr. Perez's apartment and told them that his brother-in-law would meet them at the liquor store.

Mr. Perez testified that he drove himself and the Defendant to the liquor store in a red SUV. An older white male approached the vehicle, and, after some discussion, Mr. Perez told him the price of $150. Mr. Perez had originally quoted a price of $140 but added another $10 for gas. This confused the buyer because he thought the price was $140, but he agreed, and Mr. Perez went into the store to get change. Mr. Perez returned with the change, gave the money from the sale to the Defendant, and drove away. Mr. Perez initially attempted to follow the buyer to make sure he "[w]asn't the police" but lost sight of him. Shortly thereafter, he and the Defendant were pulled over by a black unmarked police vehicle. Mr. Perez said that the Defendant had the bottle of morphine in his possession during the drive from Murfreesboro but that Mr. Perez had possession of the bottle from the time they left his apartment until he handed it over to the buyer. Mr. Perez reiterated that the Defendant was the one who had the morphine and wanted to sell it but that he was a willing participant in the endeavor.

Agent Laura Cole, an analyst with the Tennessee Bureau of Investigation crime laboratory, testified that the substance that was purported to be liquid morphine was instead liquid codeine, a Schedule II controlled substance. The weight of the liquid was 16.94 grams.

*Id*. at *1-3.

*Post-conviction Hearing*

Trial counsel testified that he was appointed to represent Petitioner and filed a request for discovery, which included "any favorable deal for testimony of the coconspirator[,]" Joseph Perez. His standard discovery form included a request for any discovery required under Tennessee Criminal Procedure Rule 16 and any applicable case law, "that being *Brady*, *Giglio*, or any of its progeny." Trial counsel agreed that he did not present any proof on Petitioner's behalf at trial. He said: "I think that differs from whether he had a defense. He certainly had a defense and we had a defense strategy, yes." Trial counsel testified that he did not receive any information on Mr. Perez's criminal history from the State.

On cross-examination, trial counsel testified that he met with Petitioner several times to review discovery and discuss Petitioner's defense. Petitioner was of the opinion that all of the State's witnesses were liars and that he was not guilty. Trial counsel said that Petitioner agreed with the defense strategy. He remembered that the audio of the drug transaction was difficult to hear. However, it became apparent during trial as to what was being said, and Lieutenant Tim Miller's trial testimony placed the recording into context, which was damaging to Petitioner's defense. Trial counsel agreed that the proof at trial concerning the drug transaction "was everybody met, I think, in the parking lot of a liquor store or a convenience store. Mr. Perez and [Petitioner] were in one vehicle. [Lieutenant] Tim Miller met them and walked up to their vehicle." Trial counsel testified that Lieutenant Miller handed the money to Mr. Perez but there was some question as to whether Petitioner ever had the bottle of morphine (later determined to be codeine) in his hand. Trial counsel further testified:

> I do recall that Agent Miller's testimony was different than Mr. Perez's testimony in that regard about whether [Petitioner] handed a bottle of morphine to Mr. Perez who in turn handed it to Agent Miller. That was Agent Miller's testimony but that was not Mr. Perez's testimony. I do recall pointing that out in cross-examination, and closing arguments as well.

Trial counsel testified that the defense theory was that even though Petitioner was present at the drug transaction, he was not involved and that Mr. Perez actually conducted the transaction. He recalled pointing out at trial that there was a lack of proof between the State's confidential informant and Petitioner "in terms of whether there was sufficient evidence to convict him of a conspiracy. So[,] I believe that was raised in the trial and came out through cross-examination." The difference in testimony between Lieutenant Miller and Mr. Perez was addressed on appeal through the issue of sufficiency of evidence. Trial counsel agreed that the testimony at trial was that when Defendant and Mr. Perez were pulled over, Defendant had $150 in his possession, which was the amount of the drug transaction.

Trial counsel agreed that Petitioner had multiple opportunities to interact with him concerning the manner or type of questions that would be asked of witnesses on cross-examination and various points that needed to be made. He testified:

> And, of course, he was sitting right next to me throughout the duration of the entire trial. I do recall that when I would finish questioning the witnesses, I would inquire with him often about, you know, is there anything else that I need to ask this witness that you think is important. He would also make notes. I have a notepad that I typically pass to my client when they're sitting next to me during a trial, and he would make notes on the notepad. So we communicated just fine.

Trial counsel testified that he and Petitioner discussed whether Petitioner should testify at trial, and Petitioner chose not to testify. It was also trial counsel's recommendation that Petitioner not testify. He noted that if Petitioner had chosen to testify, the State could have cross-examined him about his prior felony conviction for escape. Trial counsel testified that Petitioner had numerous other felony convictions that he was successful in getting excluded. Trial counsel was unaware prior to trial of any agreement between the State and Mr. Perez concerning his pending charges, and Mr. Perez was questioned at trial concerning an agreement. Mr. Perez testified at trial that there was no specific agreement but that he hoped to obtain favorable treatment concerning his pending charges.

Petitioner testified that trial counsel met with him four times prior to trial for thirty minutes to an hour during each meeting. He said that Mr. Perez received a two-year sentence for his role in the drug transaction in exchange for his testimony against Petitioner, and Petitioner was sentenced to twenty-four years. Petitioner denied participating in the drug transaction and said that the officers involved were "crooked." He testified that he did not "exclude himself from the scene" because he had injured his ankle and could not walk. Petitioner said that Lieutenant Miller and another drug agent were under investigation, and he asked trial counsel to "add" that information at trial.

On cross-examination, Petitioner said that he "heard" Mr. Perez only received a two-year sentence for his involvement in the drug transaction. However, he had not seen any court documents concerning Mr. Perez's sentence. Petitioner did not dispute that after testifying against Petitioner at trial, Mr. Perez was sentenced to consecutive sentences of two years and six months for burglary and six years for filing a false report.

The post-conviction court made extensive findings of fact in its written order denying post-conviction relief concerning each claim raised by Petitioner. The post-conviction court ultimately resolved any credibility issues between Petitioner and trial counsel in favor of trial counsel, and found that Petitioner failed to prove ineffective assistance of counsel by failing to prove either deficient performance or prejudice. It is from this judgment that Petitioner now appeals.

**Analysis**

Petitioner contends on appeal that the post-conviction court erred in finding that he received the effective assistance of trial counsel. More specifically, Petitioner argues that trial counsel was ineffective for failing to present any proof on his behalf at trial. The State responds that Petitioner is not entitled to relief on this claim because the post-conviction court correctly concluded that Petitioner failed to prove his factual allegation by clear and convincing evidence. The State further points out that the post-conviction court "expressly accredited" trial counsel's testimony, finding "any factual disputes in favor of [t]rial [c]ounsel."

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697. Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger*, 279 S.W.3d at 294. The post-conviction court's application of law to its factual findings is reviewed de novo with no presumption of correctness. *Calvert*, 342 S.W.3d at 485. A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to de novo review with no

presumption of correctness. *Id.*; *Dellinger*, 279 S.W.3d at 294; *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008).

Review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006). Deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *Cooper v. State,* 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome" of the trial. *Id.* The stronger the proof of guilt presented at trial, the more difficult it is to prove the prejudice prong of *Strickland*. When proof of guilt is overwhelming, proving prejudice is exceedingly difficult. *See Proctor v. State*, 868 S.W.2d 669, 673 (Tenn. Crim. App. 1992); *Randy Bray v. State*, No. M2011-00665-CCA-R3-PC, 2012 WL 1895948, at *6 (Tenn. Crim. App., May 23, 2012) (finding that, in light of overwhelming evidence, petitioner could not demonstrate prejudice); *Raymond E. McNeil v. State*, No. M2010-00671-CCA-R3-PC, 2011 WL 704452, at *6 (Tenn. Crim. App., Mar. 1, 2011) (finding that overwhelming evidence of guilt precluded showing of prejudice from admission of item of evidence at trial).

In this case, the post-conviction court made the following findings concerning Petitioner's claim that trial counsel was ineffective for failing to present any proof at trial:

> The gravamen of this issue raised by the Petitioner appears that [trial counsel] failed to present "proof" during the Defense's case in chief. However, the Petitioner failed to put on any proof at the PC Hearing as to what "proof" he desired to put on during the Defense's case in chief. The Court cannot guess as to whether such proof, if admitted at trial, would have caused a different result. The Court will note that [trial counsel] set forth a clear and well-reasoned defense in this case. It is easy to discern from the proof that the Defendant's theory was that he was merely in the vehicle with Mr. Perez and not part of the transaction. However, in addition to Mr. Perez's testimony that

clearly inculpated the Defendant, Lieutenant Miller testified that he saw the Defendant pass the bottle to Mr. Perez, and Agent George testified that the Defendant had $150 on him when they were stopped immediately after the transaction. Notably $150 was the exact amount of the drug transaction and no money was found on Mr. Perez. The undersigned is hard-pressed to see any possible credible testimony the Defendant could have given to counter this proof that would have led to a different verdict. Petitioner has failed to show that Trial Counsel's performance was in any way deficient. Petitioner is not entitled to relief on this issue.

The record does not preponderate against the post-conviction court's findings concerning this issue, and the post-conviction court specifically accredited trial counsel's testimony concerning Petitioner's defense. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). Petitioner did not present any evidence at the post-conviction hearing to show what proof trial counsel should have introduced at trial, and he did not allege at the post-conviction hearing or in his brief how the lack of any proof affected his trial. The proof in this case was overwhelming. Therefore, Petitioner has not proven his factual allegation by clear and convincing evidence or shown that he was prejudiced in any way by trial counsel's performance in this area. *Strickland*, 466 U.S. at 694. Petitioner is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JILL BARTEE AYERS, JUDGE